## IN THE MATTER OF FLORENCE F. FORGOTSON, AN AT-TORNEY-AT-LAW.

Argued September 10, 1963—Decided October 7, 1963.

*Mr. William R. Blair, Jr.,* a member of the Monmouth County Ethics Committee, argued for the order to show cause.

*Mr. Roger H. McGlynn* argued in opposition to the order to show cause (*Messrs. McGlynn, Stein & McGlynn,* attorneys).

PER CURIAM. In 1961 a complaint against the respondent Florence F. Forgotson was filed with the Monmouth County Ethics Committee. It was signed by Clarence B. Coward and Christina M. Coward and charged the respondent with unethical and unprofessional conduct in the obtainment of an Alabama divorce by Mr. Coward. *Cf. In re Cohen,* 10 *N. J.* 601 (1952). The respondent filed an answer denying the charge and, after extended hearings, the Ethics Committee made the finding "that there was not sufficient credible testimony to warrant a conclusion that there was unethical or unprofessional conduct on the part of Forgotson in connection with the divorce action." Review of that finding has not been sought before this court and we shall permit it to remain undisturbed. However, the Ethics Committee made the additional finding from testimony introduced during the hearings, that the respondent had commingled trust funds contrary to *Canon* 11 of the *Canons of Professional Ethics,* and, on the basis thereof, it filed a presentment against the respondent in accordance with *R. R.* 1 :16–4(h).

Upon the filing of the presentment, this court issued an order to show cause why the respondent should not be disciplined. Briefs were filed and the matter was duly argued. The respondent makes no point about the fact that the complaint before the Ethics Committee was never formally amended to include a charge under *Canon* 11. In any event, the underlying material facts are undisputed and the respondent has had fair opportunity before the committee and in this

court to meet a charge of violation of *Canon* 11. The facts, as taken from her own testimony during the hearings, may be summarized as follows:

In May 1960 Mrs. Coward filed a complaint for support against her husband in the Juvenile and Domestic Relations Court of Monmouth County and instituted a divorce action in the Chancery Division of the Superior Court of New Jersey. Mr. Coward retained the respondent to act as his attorney in these proceedings and in the handling of his financial problems. The respondent received a $200 cash retainer on account of her legal fee, engaged an investigator, entered an appearance in the divorce proceeding, and negotiated an agreement with Mrs. Coward's attorney with respect to financial matters.

In July 1960 Mr. Coward came to the respondent's office with a notice that judgment in the sum of $360.15 plus costs had been entered against him by the Industrial Bank of Commerce and that his wages had been garnisheed. He told the respondent that he had no money and could not obtain a loan without a comaker and he asked whether the respondent "would endorse his note by signing as a comaker." The respondent told him that she would and she made arrangements for the loan with the Monmouth County National Bank, where she maintained a general checking account. Mr. Coward signed a note as borrower and the respondent signed it as comaker; the note was in the sum of $1,704, payable in installments over 24 months and the net amount paid by the bank was $1,517.70 in the form of a check to the order of the respondent.

The respondent's arrangement with Mr. Coward was that out of the proceeds of the loan she would make settlement and payment of the Industrial Bank's judgment, make payment of the investigator's fee, and apply the balance towards her own fee for legal services. When the respondent received the Monmouth Bank's check in the sum of $1,517.70 she did not deposit it in a trust account; indeed she had no trust

account. Nor did she deposit it in her general checking account. As soon as she received it she endorsed and forwarded it to the Hudson County National Bank in payment of her own personal obligation.

On the following day she deposited a $5,000 check in her general checking account at the Monmouth Bank, but that account was reduced to a nominal balance before the date of any payment on account of the judgment held by the Industrial Bank or the investigator's fee. In August 1960 the respondent paid to the investigator the sum of $350 which, together with the $26 earlier advanced to him by the respondent, represented his full fee of $376, and in October 1960 the respondent paid the sum of $390 in full settlement of the Industrial Bank's judgment and related charges. Mr. Coward made payments on the note for a while but then defaulted. The respondent paid the balance of $639 due on the note, and she applied the difference between the sum originally received from the bank and her total outlays towards payment of her own fee for legal services.

The respondent's position is that she was under no trust responsibility with respect to the funds received from the Monmouth Bank. She contends that the bank's loan was really to her rather than to Mr. Coward and that her only obligation to Mr. Coward was in the nature of a debtor's obligation to pay the judgment and the investigator's fee. Her contention is wholly insupportable. The loan by the bank was to Mr. Coward on a note which designated him as borrower and the respondent as comaker. The proceeds of the loan were legally his not hers although she was to disburse them in accordance with her arrangement with him. She had no right to commingle the proceeds with her personal funds or to use them for her personal purposes without first providing for the full discharge of her fiduciary undertakings in connection with the judgment and the investigator's fee. When she forwarded the proceeds to the Hudson County National Bank in payment of her personal obligation she

clearly violated *Canon* 11.[1] The fact that the canon was violated was not obviated by the later discharge of her undertakings. See *In re Gavel,* 22 *N. J.* 248, 264–265 (1956); *In re Stoldt,* 34 *N. J.* 355, 357 (1961).

The respondent suggests that there was no impropriety in her use of the proceeds of the loan in view of her contemporaneous action in depositing a check for $5,000 in her general checking account. She asserts that this represented an exchange which preserved intact the funds to be used in the discharge of her undertakings. This completely ignores the explicit prohibition in the canon against the commingling of trust funds and the fact that she had wrongfully reduced her balance in the general checking account to a nominal amount before any payment was made on account of the judgment or the investigator's fee.

The respondent's testimony during the hearings indicated that she had not established any trust account, that she had on various occasions placed trust funds in her personal checking account, and that she had not installed a suitable bookkeeping system, all in disregard of explicit cautions voiced by this court. See *In re Banner,* 31 *N. J.* 24 (1959); *In re Boyle,* 18 *N. J.* 415 (1955); *cf. In re Petti,* 36 *N. J.* 146, 156–157 (1961); *In re White,* 24 *N. J.* 521, 524 (1957). It is only fortuitous that no harm has heretofore resulted and the respondent must, of course, take corrective action in connection with her future handling of trust funds. We understand from statements during the oral argument that such action has already been initiated.

---

[1] The canon reads as follows:

*"Dealing With Trust Property*

The lawyer should refrain from any action whereby for his personal benefit or gain he abuses or takes advantage of the confidence reposed in him by his client.

Money of the client or collected for the client or other trust property coming into the possession of the lawyer should be reported and accounted for promptly, and should not under any circumstances be commingled with his own or be used by him."

We find that in her handling of the proceeds of the loan the respondent violated *Canon* 11. In the light of the extensive proceedings to which she has been subjected and all the pertinent circumstances, we consider that a reprimand will constitute appropriate discipline. An order to that effect will be entered.

*For reprimand* — Justices JACOBS, FRANCIS, PROCTOR, HALL and HANEMAN—5.